TOWN OF KEARNY, APPELLANT, v. DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY *ET AL.*, RESPONDENT.

Argued January 14, 1957—Decided April 8, 1957.

*Mr. Robert J. McCurrie* argued the cause for the appellant.

*Mr. Leo Rosenblum* argued the cause for the respondent City of Jersey City (*Mr. James A. Tumulty, Jr.*, attorney).

*Mr. John F. Crane* argued the cause for the respondent Division of Tax Appeals (*Mr. Grover C. Richman, Jr.*, attorney; *Mr. Thomas P. Nolan* on the brief).

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Clapp in the court below.

HEHER, J. (concurring). I concur in the holding of the Appellate Division that sales-assessment ratio data have practical utility in the equalization of aggregates ordained by *R. S.* 54:3–17, 18, as a means of inter-municipal sharing of the economic burden of county government; and that the sales-ratio studies here used served to achieve a reasonable measure of equality to that end. The self-same formula was applied to all other municipalities within the County, under like general conditions; and there is no basis for the tendered hypothesis that consideration of the sale prices of residence properties in Kearny during the test period would "necessarily distort the percentage ratio," as including sales in excess of "true value." There is no showing of residence price variations due to abnormal circumstances calling for adjustment to avert inter-municipal unfairness.

It is a fair presumption on the record made that the same conditions obtain elsewhere in the County, and the overall ratio does not work substantial inequity in the apportionment of the tax burden. There was general parity in this regard between the several municipalities.

But there would seem to be substance to the criticism that the inclusion of industrial and commercial properties, apartment houses and more than four-family residences in the one category tends to unbalance the sales-ratio process and subvert the principle of equality of burden that is the design of the statutory provision, *R. S.* 54:3–17, 18, for an equalization table according to the "general ratio or percentage of full value" at which assessments are made. There are large and varied industries throughout the State, in concentration in many areas, and, for want of sales of properties in that category, in sufficient number or none at all, the ratio of assessed to true value is largely determined by sales of other real properties with which they are classified. Here, for example, only one industrial property had been sold during the study period, at a price making for an assessment-sales ratio of 86.4%, but this sales ratio was reduced to 51.93% by the sales of commercial properties and multi-family residences and apartment houses placed in the same category, 135 in number; and the argument is that thereby industrial properties in Kearny have been greatly undervalued and so it has been visited with a substantially disproportionate share of the cost of county government.

It is shown that industrial properties constitute 52% of Kearny's ratables, or 36 million dollars of the 69 million dollars reported by Kearny's assessors for 1955; that in the final calculation a ratio of 55.64% was set for vacant land, based upon 133 sales, and a ratio of 38.92% for residence properties (up to four families), on 827 sales; and it is said that since these respective ratios are assigned to vacant lands and residence properties of the given class "it is difficult to understand why the sales ratio of 86.4% as to industrial property should not also be unquestioned

when all three are calculated in the identical manner and based on the same material, namely, actual sales during a given period," and, while such categorization of industrial properties "with all others" may be insignificant in municipalities "where industrial properties do not play so important a part in the tax picture," in Kearny segregation of industrial properties is requisite to secure a ratio making for a just distribution of the burden.

There is obvious virtue in the separate classification of industrial properties; and it becomes an imperative need where in the particular circumstances the contrary course would provide an illusory ratio that would undo the statutory policy of equalization of burden. And this case serves to illustrate the point. Judge Clapp, for the Appellate Division, suggests that "a breaking up of the fourth category into separate categories would serve to minimize error if, as alleged, industrial properties are assessed at a higher ratio to their value than commercial properties or apartment houses," and so also "further stratification," if need be, but it was found that there was "no sufficient proof or assurance that valuations of industrial properties in Kearny are assessed by and large at a substantially greater percentage of true value than commercial properties or apartment houses," and it was not shown that an "arbitrary result was reached" by the State Division "when it refused to provide a separate category for industrial properties."

There is no indication that the industrial properties in Kearny are assessed at a greater ratio of true value than commercial properties, apartment houses and multi-family residences also comprised within the fourth category; nor is it contended that in this regard the classification is illusory when related to the legislative policy to be served, save that it unduly minimizes the effect of the one sale of industrial property. But this single sale, made in 1953, cannot be given controlling significance in this inquiry, for that in itself would thwart the end to be served. And Judge Clapp refers to matters of argument offered by Kearny suggesting that this one sale is not indicative of

the sales value of its industrial properties. Moreover, there is good reason to believe that the particular relation of industrial ratables to the whole is not peculiar to Kearny; there are comparable conditions elsewhere in the County. The case for an arbitrary sales-ratio to Kearny's detriment has not been made out.

The sales-ratio process is evidential on this inquiry, but not *per se* conclusive either in law or in fact, to the exclusion of all else. There is no contention *contra;* nor could there be in good reason. All other relevant evidence is admissible. The State Division here "felt that [the] tables promulgated by the Director under the 1954 act should be an important consideration in its review of the equalization table for the year 1955"; but this "did not preclude the Division from giving due consideration to other evidence and to the Director's prior and subsequent actions insofar as they might reflect on the table under review or furnish support to or corroboration of other information and evidence submitted."

I join in the affirmance of the judgment.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and WEINTRAUB—6.